IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

MICHAEL W. ACKERMAN,

    Defendant.
_____/

Civil Action No. 1:20-cv-1181

DECLARATION OF AMIE RIGGLE BERLIN PURSUANT TO 28 U.S.C. § 1746

I, Amie Riggle Berlin, hereby make the following declaration based upon my personal knowledge:

1. I am employed as a Trial Attorney in the Division of Enforcement of the Securities and Exchange Commission (the "Commission") in Miami, Florida, and I am counsel for Plaintiff Commission in the above-captioned matter.

2. In accordance with ECF Rule 16(b), I submit this Declaration pursuant to 28 U.S.C. § 1746 (2018) in support of the Commission's Motion for Entry of Final Judgment by Default against Defendant Michael Ackerman (the "Motion").

## I. BACKGROUND

### Description of the Nature of the Claims

3. On February 11, 2020, the Commission filed its Complaint in this action against Defendants Michael Ackerman ("Ackerman"), seeking injunctive relief, disgorgement of ill-gotten gains with prejudgment interest, and a civil money penalty for violations of Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)] (Counts I-III), and Section

10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 ("Exchange Act) [17 C.F.R. § 240.10b-5] (Counts IV-VI).

4. The Commission's claims arise from Ackerman operating a fraudulent securities offering scheme through two entities he controlled, Q3 Trading Club and Q3 I, LP ("Q3 I") (collectively, the "Q3 Companies"). From at least March 2018 through December 2019, Ackerman repeatedly and falsely represented to investors that investment generated monthly profits of approximately 12% to 17% and that Q3 had assets close to $300 million as a result of Ackerman's algorithmic trading success.  In reality, account statements provided to investors were based on bogus screenshots taken by Ackerman of Q3's trading account, an account solely controlled by and over which Ackerman had sole access.  Ackerman doctored these screenshots to create the illusion that Q3 was highly invested in cryptocurrencies and was extraordinarily profitable.  These representations were false.  At no time did Q3 have more than $6 million in its trading account, and no more than $10 million was wired to Q3 accounts held at any digital asset trading platform. In stark contrast to what was told to investors, as of mid-December 2019, Q3's only assets appeared to be approximately $405,000 in cryptocurrencies.

5. Ackerman also made material misrepresentations regarding certain safeguards Q3 put in place to protect the movement of investor funds.  He also failed to properly and fully disclose to investors that he authorized to be paid from investor funds several million dollars in purported licensing fees (the "Licensing Fees") to himself and others based on the purported success of the trading algorithm.  Ackerman raised at least $33 million from more than 150 investors through the offer and sale of securities, and misappropriated approximately $7.5 million of investor funds to enrich himself.

6.      This conduct violates the anti-fraud provisions of the federal securities laws, including Section 10(b) and Rule 10b-5(b) of the Exchange Act, which prohibit (1) the making of a false statement or omission necessary in order to make the statements made not misleading, (2) of material fact, (3) with scienter, (4) in connection with the purchase or sale of a security. (Counts IV-VI).

7.      This conduct also violates Section 17(a)(2) of the Securities Act, which prohibits any person, in the offer or sale of a security, from directly or indirectly obtaining money or property by means of an untrue statement of material fact or an omission to state a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading, and Sections 17(a)(1) and (a)(3) of the Securities Act, which prohibit any person from, in the offer or sale of a security, employing "any device, scheme, or artifice to defraud" or engaging in any "transaction, practice, or course of business" which operates as a fraud or deceit. (Counts I-III).

### Statement that the Defendant Is Not An Infant or Incompetent

8.      Ackerman is an adult and upon information and belief, he is not incompetent or on active duty in any branch or division of the United States military.

### The Basis for Entering a Default Judgment, Including a Description of the Method and Date of Service of the Summons and Complaint

9.      The basis for entering a default judgment against Ackerman is his failure to answer the Complaint or to otherwise appear to defend this action.

10.     Ackerman was properly served with process by personal service on February 25, 2020.  [D.E. 7].

11.     Ackerman failed to appear or answer the Complaint, and the Clerk of Court entered a certificate of default against him on July 28, 2020. [D.E. 11].

12. The Commission immediately mailed Ackerman each filing and Order in this case, including the certificate of default.

## II. DISGORGEMENT AND PREJUDGMENT INTEREST, AND CIVIL PENALTY

13. As set forth in the Complaint and as more fully addressed in the Commission's Memorandum of Law submitted in support of the Motion, the Commission seeks disgorgement of Ackerman's ill-gotten gains with prejudgment interest, as well as a civil money penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

14. The Complaint alleges Ackerman misappropriated $7.5 million from investors. The Commission also seeks to recover post-judgment interest on any restitution and civil monetary penalty amounts ordered by the Court.

15. Disgorgement of ill-gotten gains cannot be collected more than once against a defendant. There are two parallel cases pending against Ackerman, *CFTC v. Ackerman*, 20-01183-NRB (SDNY) and *U.S. v. Ackerman*, 20-cr-00093-LTS (SDNY). In the CFTC case against Ackerman, the CFTC currently has a motion for default judgment pending against Ackerman in which it seeks from Ackerman and his companies investor funds not returned to investors. In the criminal case against Ackerman, the government is seeking restitution against Ackerman. Since the amounts ordered in the CFTC and criminal cases against Ackerman necessarily impact the amount this Court can order Ackerman to disgorge in this case, the Commission asks that the Court permit the Commission to file a motion to determine the disgorgement amount after restitution, if any, has been ordered in the criminal case.

16. As for the civil penalty, pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], the Court can award a civil

penalty amount pursuant to the statutory figures set forth in these statutes or it can award a civil penalty amount equal to the amount of ill-gotten gains.

17. In determining the appropriate penalty amount, Courts consider whether a defendant has been penalized by any other agency, including in parallel criminal matters. Here, there is a parallel criminal case pending against Ackerman based on the same conduct at issue in this case. Accordingly, the Commission asks that the Court determine the civil penalty amount after Ackerman's sentencing because any sentence must be considered in determining what, if any, civil penalty should be imposed in this case against Ackerman.

### III. EXHIBITS

18. Attached hereto as Exhibit 1 is a true and correct copy of the Commission's Complaint in this action. (DE 1).

19. Attached as Exhibit 2 is a true and correct copy of the Summons (DE 6).

20. Attached as Exhibit 3 is a true and correct copy of the Proof of Service of the Summons and Complaint (DE 7).

21. Attached as Exhibit 4 is a true and correct copy of the Clerk's Certificate of Default (DE 11).

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 11th day of January 2021.

s/Amie Riggle Berlin  
Amie Riggle Berlin