IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

MICHAEL W. ACKERMAN,

    Defendant.

_____/

Civil Action No. 1:20-cv-1181

<u>DECLARATION OF AMIE RIGGLE BERLIN PURSUANT TO 28 U.S.C. § 1746</u>

I, Amie Riggle Berlin, hereby make the following declaration based upon my personal knowledge:

1.    I am employed as a Trial Attorney in the Division of Enforcement of the Securities and Exchange Commission (the "Commission") in Miami, Florida, and I am counsel for Plaintiff Commission in the above-captioned matter.

2.    In accordance with ECF Rule 16(b), I submit this Declaration pursuant to 28 U.S.C. § 1746 (2018) in support of the Commission's Motion for Entry of Final Judgment by Default against Defendant Michael Ackerman (the "Motion").

## I. BACKGROUND

### Description of the Nature of the Claims

3.    On February 11, 2020, the Commission filed its Complaint in this action against Defendants Michael Ackerman ("Ackerman"), seeking injunctive relief, disgorgement of ill-gotten gains with prejudgment interest, and a civil money penalty for violations of Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)] (Counts I-III), and Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 ("Exchange Act) [17 C.F.R. § 240.10b-5] (Counts IV-VI).

4. The Commission's claims arise from Ackerman operating a fraudulent securities offering scheme through two entities he controlled, Q3 Trading Club and Q3 I, LP ("Q3 I") (collectively, the "Q3 Companies"). From at least March 2018 through December 2019, Ackerman repeatedly and falsely represented to investors that investment generated monthly profits of approximately 12% to 17% and that Q3 had assets close to $300 million as a result of Ackerman's algorithmic trading success. In reality, account statements provided to investors were based on bogus screenshots taken by Ackerman of Q3's trading account, an account solely controlled by and over which Ackerman had sole access. Ackerman doctored these screenshots to create the illusion that Q3 was highly invested in cryptocurrencies and was extraordinarily profitable. These representations were false. At no time did Q3 have more than $6 million in its trading account, and no more than $10 million was wired to Q3 accounts held at any digital asset trading platform. In stark contrast to what was told to investors, as of mid-December 2019, Q3's only assets appeared to be approximately $405,000 in cryptocurrencies.

5. Ackerman also made material misrepresentations regarding certain safeguards Q3 put in place to protect the movement of investor funds. He also failed to properly and fully disclose to investors that he authorized to be paid from investor funds several million dollars in purported licensing fees (the "Licensing Fees") to himself and others based on the purported success of the trading algorithm. Ackerman raised at least $33 million from more than 150 investors through the offer and sale of securities, and misappropriated approximately $7.5 million of investor funds to enrich himself.

6. This conduct violates the anti-fraud provisions of the federal securities laws, including Section 10(b) and Rule 10b-5(b) of the Exchange Act, which prohibit (1) the making of a false statement or omission necessary in order to make the statements made not misleading, (2)

of material fact, (3) with scienter, (4) in connection with the purchase or sale of a security. (Counts IV-VI).

7. This conduct also violates Section 17(a)(2) of the Securities Act, which prohibits any person, in the offer or sale of a security, from directly or indirectly obtaining money or property by means of an untrue statement of material fact or an omission to state a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading, and Sections 17(a)(1) and (a)(3) of the Securities Act, which prohibit any person from, in the offer or sale of a security, employing "any device, scheme, or artifice to defraud" or engaging in any "transaction, practice, or course of business" which operates as a fraud or deceit. (Counts I-III).

### Statement that the Defendant Is Not An Infant or Incompetent

8. Ackerman is an adult and upon information and belief, he is not incompetent or on active duty in any branch or division of the United States military.

### The Basis for Entering a Default Judgment, Including a Description of the Method and Date of Service of the Summons and Complaint

9. The basis for entering a default judgment against Ackerman is his failure to answer the Complaint or to otherwise appear to defend this action.

10. Ackerman was properly served with process by personal service on February 25, 2020. [D.E. 7].

11. Ackerman failed to appear or answer the Complaint, and the Clerk of Court entered a certificate of default against him on July 28, 2020. [D.E. 11].

12. The Commission immediately mailed Ackerman each filing and Order in this case, including the certificate of default.

## II. DISGORGEMENT AND PREJUDGMENT INTEREST, AND CIVIL PENALTY

13. The Commission's Complaint seeks disgorgement of Ackerman's ill-gotten gains with prejudgment interest, as well as a civil money penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

14. The Complaint alleges Ackerman raised more than $30 million from investors through fraud, and misappropriated $7.5 million of these investor funds.  The Commission also seeks to recover post-judgment interest on any restitution and civil monetary penalty amounts ordered by the Court.

15. The Commission must demonstrate a reasonable approximation of ill-gotten gains. The Commission files herewith the Declaration of Kathleen Strandell, an accountant with the Commission, setting forth the calculation of ill-gotten gains [Exhibit 6].   From no later than July 1, 2017 until at least December 1, 2019, Ackerman and the Companies raised approximately $32,822,743 from approximately 160 investors and returned approximately $5,642,169 to at least 46 investors, resulting in $27,180,574 of investor principal retained as ill-gotten gains [Exhibit 6 at ¶¶ 8-9].  Accordingly, $27,180,574  is a reasonable approximation of disgorgement in this case.

16. In addition, courts have discretion to add prejudgment interest to a defendant's disgorgement amount to prevent the defendant from benefitting from the use of his ill-gotten gains interest free.  *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1475 (2d Cir. 1996).  Prejudgment interest is appropriately calculated using the same rate used by the Internal Revenue Service to calculate underpayment penalties pursuant to 26 U.S.C. § 6621(a)(2). *Id.*   Strandell completed a prejudgment interest calculation on the disgorgement figure. From November 18, 2019, the last date that investor funds were deposited as a violation start date, and November 2, 2022,

prejudgment interest is calculated in the amount of $3,122,944.62 [Exhibit 6 at ¶¶ 10-11 and Exhibit A thereto].

17. Thus, the total amount of disgorgement and prejudgment interest is $30,303,518.62.

18. However, disgorgement of ill-gotten gains cannot be collected more than once against a defendant. There are two parallel cases pending against Ackerman, *CFTC v. Ackerman*, 20-01183-NRB (SDNY) and *U.S. v. Ackerman*, 20-cr-00093-LTS (SDNY). In the criminal case, the Court ordered restitution of more than $31 million. [Exhibit 5]. This amount includes the same disgorgement amount at issue in this case, and the criminal case includes the same victims of the fraud alleged in the instant case. The Commission requests that the Court enter and Order setting the disgorgement and prejudgment interest amount in this case as $30,303,518.62 and ordering that the amount is deemed satisfied by Ackerman's payment of the restitution ordered entered against him in the criminal case.

19. The Commission dismisses the civil monetary penalty against Ackerman.

### III. EXHIBITS

20. Attached hereto as Exhibit 1 is a true and correct copy of the Commission's Complaint in this action. (ECF No. 1).

21. Attached as Exhibit 2 is a true and correct copy of the Summons (ECF No. 6).

22. Attached as Exhibit 3 is a true and correct copy of the Proof of Service of the Summons and Complaint (ECF No. 7).

23. Attached as Exhibit 4 is a true and correct copy of the Clerk's Certificate of Default (ECF No. 11).

24. Attached as Exhibit 5 is a true and correct copy of the August 22, 2022 restitution order entered against Ackerman in the parallel criminal case *U.S. v. Ackerman*, 20-cr-00093-LTS (SDNY).

25. Attached as Exhibit 6 is a true and correct copy of the Declaration of Kathleen Strandell with the prejudgment interest calculation attached thereto.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 2nd day of December 2022 in Key Biscayne, Florida.

s/Amie Riggle Berlin<br>
Amie Riggle Berlin